WASLEY v. CHICAGO, R. I. & P. RY. CO.

ROENFANZ v. SAME.

(Circuit Court, N. D. Iowa, C. D. September 8, 1906.)

Nos. 285, 289.

REMOVAL OF CAUSES—DIVERSITY OF CITIZENSHIP—CONSOLIDATED RAILROAD CORPORATION.

A railroad company, which was a corporation of both Illinois and Iowa, having been formed by the consolidation of two companies, one of each state, and owning a line of road therein extending to the boundary line, united with five Iowa companies to form a new company, into which they consolidated and merged "their capital stocks, corporate and other franchises, rights, privileges, and property, of every nature and description," as permitted by the laws of both states. It was provided that the consolidated corporation should commence as soon as the required certificates should be filed in each state, and they were so filed, and the corporation took over and held and operated the properties of the several constituent companies. *Held*, that it became a corporation of both states, and in either, for the purposes of federal jurisdiction, was a corporation of that state, and could not remove a cause brought against it in a state court therein on the ground of diversity of citizenship.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, § 67.

Citizenship of corporations, see notes to St. Louis, I. M. & S. Ry. Co. v. Newcom, 6 C. C. A. 174; Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 301.]

## On Pleas to the Jurisdiction and Motions to Remand.

The defendant, the Chicago, Rock Island & Pacific Railway Company, is a railroad corporation and owns and operates lines of railway in the state of Iowa and adjacent states. The plaintiffs were its employés, and received injuries while so engaged upon its roads in Iowa, for which they seek to recover damages by these actions, which were commenced in the district court of Iowa in and for Winnebago and Emmet counties, respectively, against the defendant as a corporation organized and existing under the laws of Iowa, and operating its road in that state, and removed to this court by the defendant. The petitions for removal are in due form, and each alleges that defendant was when the action was commenced and still is a corporation organized under the laws of Illinois, that the plaintiff Wasley then was and still is a citizen of the state of Minnesota, and that the plaintiff Roenfanz then was and still is a citizen of the state of Iowa. The records have been filed in this court, and the plaintiff in each case files a plea to the jurisdiction of the court and motion to remand, upon the ground that defendant is a consolidated corporation (composed of several Iowa corporations and an Illinois and Iowa corporation), duly incorporated in each of the states of Iowa and Illinois, under the laws of said states, respectively.

From the evidence adduced it appears:

(1) That by an act of the General Assembly of the state of Illinois, approved February 27, 1847 (Priv. Laws 1846–47, p. 139) the Rock Island & La Salle Railroad Co., was created with a capital of $300,000, and empowered to build and operate a railroad from the then town of Rock Island on the Mississippi river in Illinois to the Illinois river at the termination of the Illinois and Michigan canal in said state; and by an act of said General Assembly approved February 7, 1851, the name of said company was changed to the Chicago & Rock Island Railroad Company, and it was authorized to increase its capital to $3,000,000 and to build and extend said railroad to the city of Chicago.

(2) That on December 22, 1852, the Mississippi & Missouri Railroad Company

was duly incorporated under the laws of Iowa, viz., chapter 43, Code of 1851, for the purpose of building and operating a line of railroad from the eastern line of the state of Iowa at or near Davenport in Scott county, on the most eligible route to the western line of said state at or near Council Bluffs in Pottawatamie county; the principal place of business of said corporation to be at Davenport in said Scott county. (Said city of Davenport being on the westerly side of the Mississippi river and opposite the town of Rock Island in Illinois.) The board of directors of said corporation, with the assent of two-thirds in interest of the stockholders was authorized to sell, dispose of, and transfer to any other person or company its property and franchises, and to connect its road with the road of any other company or corporation in the state of Illinois.

(3) That on May 28, 1866, the Chicago, Rock Island & Pacific Railroad Company was duly organized under the laws of Iowa, viz., chapter 52, Revision of 1860, for the purpose, as recited in its articles of incorporation of purchasing, acquiring, and owning the railroad and other property of the Mississippi & Missouri Railroad Company, and to build and operate a line of railroad from Kellogg, Iowa, the then western terminus of said Mississippi & Missouri Railroad, to the western line of the state of Iowa, at such point as would enable it to connect with the Union Pacific Railroad Company, then in course of construction from Omaha, Neb., so as to form a continuous line of railroad from the eastern line of said state at or near Davenport, to the western line of said state to connect with said Union Pacific Railroad Company. The principal place of business of the company is designated as Davenport, Iowa, and its board of directors was authorized and empowered to sell and dispose of absolutely to any person, company or corporation, all its properties, rights, and franchises, or to contract with any connecting railroad within or without the state for the use of its road, or to consolidate its stock and road with that of any other road within or without the state upon such terms or conditions as may be allowed by law.

(4) That on August 20, 1866, the said Chicago & Rock Island Railroad Company as party of the first part, and said Chicago, Rock Island & Pacific Railroad Company as party of the second part, entered into articles of agreement and consolidation whereby the stock and properties of the two corporations were consolidated into one corporation under the corporate name of the Chicago, Rock Island & Pacific Railroad Company, pursuant to the laws of Iowa and Illinois, which, as the articles recite, authorized them to so do. The certificates of stock of the old companies were surrendered, and the certificates of stock of the new company issued in lieu thereof to the stockholders of the old companies, and the properties, rights, and franchises of every kind and description of each of the old companies were transferred and conveyed to the new company, and that company assumed the debts and liabilities of the old companies. The new company was to commence and go into operation immediately on the execution of the agreement, and it was incorporated in each of the states of Iowa and Illinois, under the laws of said states, respectively.

(5) That on June 2, 1880, the said consolidated corporation, the Chicago, Rock Island & Pacific Railroad Company, entered into articles of agreement and consolidated with five Iowa railway corporations which articles are as follows:

"Articles of consolidation, entered into this second day of June, in the year one thousand eight hundred and eighty, by and between the Chicago, Rock Island & Pacific Railroad Company, a corporation organized and existing under the laws of the states of Illinois and Iowa, party of the first part; the Iowa Southern & Missouri Northern Railroad Company, party of the second part; the Newton & Monroe Railroad Company, party of the third part; the Atlantic Southern Railroad Company, party of the fourth part; the Avoca, Macedonia & Southwestern Railroad Company, party of the fifth part, and the Atlantic & Audubon Railroad Company, party of the sixth part—the said companies of the second, third, fourth, fifth and sixth parts being corporations which were organized and now exist under the laws of the state of Iowa—which articles witness that whereas, the several railroads by said parties severally owned, or held under indentures of lease, are operated by the party of the first part as parts of one railway system extending through or into the states of Illinois, Iowa, Missouri and Kansas; and whereas, the owners of the shares of the

capital stock of the party of the first part are also the owners of the capital stock and bonds of the other parties hereto; and whereas, a consolidation, union and merger of 'the capital stocks and corporate and other franchises, rights, privileges and property of each and all of said parties into a consolidated corporation, which will own and be possessed of all the corporate and other franchises, rights, privileges, immunities, and property of each and all of said parties, will, in the judgment of each of said parties, secure greater economy and efficiency in the management and operation of said lines, and thereby promote the interests of the public of said corporate parties and of all the stockholders in each of them; and whereas, the proposition to so consolidate, unite and merge had been submitted to the stockholders of each of said parties, at meetings duly convened and held, upon notice given in manner and form as required by law and the by-laws of the several parties, and said proposition has been approved by votes, had at said several meetings, of majorities, consisting of the holders of over three-fourths in amount of the capital stock of each of said parties: Therefore the said parties of the first, second, third, fourth, fifth, and sixth parts severally, in consideration of the premises, and the mutual execution of these articles, do convey, covenant and agree as follows:

"Article I. They do hereby consolidate, unite, and merge their capital stocks, corporate and other franchises, rights, privileges and property of every nature and description, and hereby create one consolidated corporation, which shall be known by the corporate name of the Chicago, Rock Island & Pacific Railway Company.

"Article II. The said parties of the first, second, third, fourth, fifth, and sixth parts do respectively and severally grant, bargain, sell, release, convey, assign, transfer and set over unto the Chicago, Rock Island & Pacific Railway Company, the consolidated corporation hereby created, the several and respective railroads, railroad lands, rights of way, stations, station grounds (and other properties of said respective corporations particularly describing same), and do mutually agree and declare that the same shall, from the execution of these articles and henceforth, be held and possessed by said consolidated corporation, its successors, and assigns, forever, to and for its own use, benefit and behoof forever, to all intents and purposes. * * *

"Article III. The general purpose and objects of the Chicago, Rock Island & Pacific Railway Company, the consolidated corporation hereby created shall be: (1) To own, complete, extend, improve, maintain and operate each of the several railroads heretofore owned by any of the parties hereto and hereinafter mentioned, and which are described in the respective charters and articles of association and articles of consolidation of the several parties (to which for greater particularity, reference is hereby made), and to use and enjoy all the corporate and other franchises, rights, privileges, immunities, and property of every nature and description which form a part of, or are appurtenant or relate to any of said railroads, and which have been owned by the respective parties hereto, or by any of them, or by the predecessors, assignors, or grantors of any of them [describing particularly the lines of railroad in Illinois, Iowa, and Missouri, owned by said several companies including the line from Chicago to Rock Island, and a line in Iowa and Missouri built by the Chicago & Southwestern Railway Company, a company organized in Iowa and Missouri, under the laws of said states respectively]. * * * (3) To construct or acquire by purchase or lease, railroads lateral to any of the several lines hereby consolidated, and to maintain and operate the same as parts of its railway system. * * *

"Article IV. The Chicago, Rock Island & Pacific Railway Company, the consolidated corporation hereby created shall have and possess: (1) Each and all of the corporate and other franchises, rights, powers, privileges, immunities, and property heretofore held, possessed, exercised, or enjoyed by the said parties of the first, second, third, fourth, fifth, and sixth parts hereto, or by either of them including all franchises, privileges, and immunities secured to each by its charter or charters, articles of incorporation, articles of association, articles of consolidation, and the laws of any state of the United States. * * *

"Article V. (1) The capital stock of the Chicago, Rock Island & Pacific Railway Company, the consolidated corporation hereby created, shall be limited to the sum of fifty millions dollars, until the amount thereof is increased by an

amendment of these articles of consolidation adopted in the manner provided in the thirteenth article hereof. The said capital stock shall be divided into shares, each of which shall have a par value of one hundred dollars. (2) All of the holders of the capital stock of the parties of the first, second, third, fourth, fifth and sixth parts hereto shall henceforth be stockholders in the said consolidated corporation, in like proportional amounts, and with the same rights and liabilities between them severally and the said consolidated corporation as now exist between them and the several parties hereto.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Article IX. The existence of the consolidated corporation shall commence on the first day on which the certificates required by law, showing approval by the required majority of the stockholders of each of the parties hereto, of the proposition to create said consolidated corporation, are on file in the offices of the Secretary of State for the state of Illinois, the recorder of Cook county, in said state, the Secrtary of State for the state of Iowa, and the recorder of Scott county in said state; and shall continue for a period of fifty years thereafter, which existence may be renewed from time to time as may be provided by the laws of the states of Illinois and Iowa.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Article XI. The principal place of business and general offices of said consolidated corporation shall be in the city of Chicago, in the state of Illinois. Its principal place of business in the state of Iowa shall be in the city of Davenport, in the county of Scott, in said state. It may also establish and maintain an office in the city of New York. \*   \*   \*"

These articles of agreement were duly signed by the respective parties thereto and filed in the office of the Secretary of State of the state of Iowa, June 3, 1880; and in the office of the Secretary of State of the state of Illinois, on June 4, 1880. On June 4, 1902, article V of the foregoing articles of incorporation was amended at a special meeting of the board of directors of said company, so as to limit the capital stock of said company to $75,000,000, which article of amendment was duly acknowledged by the vice president and secretary of said Chicago, Rock Island & Pacific Railway Company, and the same was duly filed for record in the office of the recorder of deeds of Scott county, Iowa, and in the office of the Secretary of State, of the state of Iowa, on June 5, 1902, and duly recorded in the records of said officers, respectively.

Oliver Gordon and Lovely & Dunn, for plaintiff Wasley.
Mack J. Groves and J. G. Myerly, for plaintiff Roenfanz.
Carroll Wright and J. L. Parish, for defendant.

REED, District Judge (after stating the facts). The articles of consolidation of the defendant company have been set out at some length in the foregoing statement for the reason that it is contended on behalf of the defendant that they show that the purpose of the consolidation of the several companies therein named was simply to take over by the Chicago, Rock Island & Pacific Railroad Company (the Iowa and Illinois corporation) the properties and rights of the five Iowa corporations named therein; to change the name of that corporation to that of the defendant company, and to reincorporate the same under the law of Illinois alone. If it should be conceded that such was the purpose of those articles it would not change their legal effect as a consolidation of the several companies into one. Yazoo, etc., Co. v. Adams, 180 U. S. 1–17, 21 Sup. Ct. 240, 45 L. Ed. 395. And if the only purpose was to take over the properties of the other Iowa corporations by the Chicago, Rock Island & Pacific Railroad Company, that company would be the real party in interest in these actions under a mere change of name, and its

reincorporation in Illinois alone would not divest it of its character as a corporation of Iowa, and it would still be a corporation of each of said states. It is admitted that under the articles of consolidation of August 20, 1866, the capital stocks and properties of the Chicago & Rock Island Railroad Company, the Illinois corporation, and of the Chicago, Rock Island & Pacific Railroad Company, the Iowa corporation, were consolidated into one company under the name of the Chicago, Rock Island & Pacific Railroad Company, and that such consolidation was effected under the laws of each of the states of Iowa and Illinois, and was not merely an incorporation in Iowa of the Illinois corporation. The Illinois company was not authorized to and never did extend its road into Iowa, and its only rights in that state were under the articles of consolidation with the Iowa corporation under the laws of that state. That consolidation was effected in Iowa under sections 1332–1334, Revision of 1860, which are substantially the same as sections 1275–1277, c. 5, of the Code of Iowa of 1873, under which the consolidation of June 2, 1880, was effected. These sections are:

"Sec. 1275. Any such corporation may join, intersect, and unite its railway with the railway of any other corporation at such point on the boundary line of this state as may be agreed upon by such corporations. And with the assent of three-fourths in interest of all the stockholders, may by purchase or sale, or otherwise, merge and consolidate the stock, property, franchises, and liabilities of such corporations, making the same one joint stock corporation upon such terms as may be agreed upon not in conflict with the laws of this state.

"Sec. 1276. Any such corporation which has or may construct its railway so as to meet or connect with any other railway in an adjoining state at the boundary line of this state, shall have power to make such contracts and agreements with the corporations controlling such railways in an adjoining state, for the transportation of freight and passengers, or for the use of its railway by such foreign corporation, as the board of directors may see proper.

"Sec. 1277. Any such corporation organized for the purpose of constructing a railway from a point within the state may construct or extend the same into or through any other state under such regulations as may be prescribed by the laws of such state; and the rights and privileges of such corporation over said extension in the construction and use thereof, and in controlling and applying the assets, shall be the same as if its railway was constructed wholly within this state."

A statute of Illinois, approved February 28, 1854, is substantially to the same effect. See Nugent v. Supervisors, 19 Wall. 242, 22 L. Ed. 83. Section 1275 provides for the consolidation of the stocks and properties of the different corporations into one corporation, and the articles of consolidation of June 2, 1880, under which the defendant company exists, plainly provide that the several parties thereto, namely, the Chicago, Rock Island & Pacific Railroad Company, a corporation of Iowa and Illinois, and the five Iowa corporations named, severally do convey, covenant, and agree, and do hereby consolidate, unite and merge their capital stocks and corporate and other franchises, rights, privileges and property of every nature and description, and hereby create one consolidated corporation which shall be known by the corporate name of the Chicago, Rock Island & Pacific Railway Company, which shall exercise the powers,

rights, and privileges therein specified. The existence of the consolidated corporation "shall commence on the first day on which the certificates required by law, showing the approval by the required majority of the stockholders of each of the parties hereto, of the proposition to create said consolidated corporation are on file in the offices of the Secretary of State for the state of Illinois, the recorder of Cook county, in said state, the Secretary of State for the state of Iowa, and the recorder of Scott county in said state, and shall continue for a period of fifty years thereafter, which existence may be renewed from time to time as may be required by the laws of the states of Illinois and Iowa." This is not merely a uniting or joinder of several corporations under one management for the purpose of operating the same as one company in which the identity of the several companies is preserved, but is unmistakably the creation of a new corporation in which the capital stocks of the old corporations as well as their properties, rights, and franchises are consolidated, and in which the stockholders of the old corporations become stockholders in the new, and associate themselves anew under the name of a new corporation to which the properties and rights of the several old corporations are conveyed and transferred, and which assumes the liabilities of the old companies.

In Pennsylvania Co. v. Railroad Co., 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. Ed. 83, a question arose as to whether or not a corporation of Illinois had become a corporation of Indiana. The court said:

"It may not be easy in all such cases to distinguish between the purpose to create a new corporation, which shall owe its existence to the law or statute under consideration, and the intent to enable a corporation already in existence under the laws of another state, to exercise its functions in the state where it is so received. The latter class of laws are common in authorizing insurance companies, banking companies, and others to do business in other states than those which have chartered them. To make such a company a corporation of another state, the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the state, or by the Legislature, and such allegiance as a state corporation owes to its creator."

The difficulty thus suggested cannot arise under the articles of consolidation of the defendant company, for they do not authorize the separate corporations, as such, to exercise their powers in either state. The consolidated company alone is authorized to do this, and its articles of consolidation comply in every essential respect with chapter 1, tit. 9, Code Iowa 1873, relating to the formation of corporations for pecuniary profit, including those for the construction of railroads, and other works of internal improvement, except that they do not appear to have been acknowledged by the several parties thereto. They designate Davenport in Scott county, as the principal place of business of the company in Iowa; were filed in the proper public offices in Iowa as required by that law, and the defendant has since been acting as, and exercising the powers and functions of, a railway corporation in Iowa thereunder. Upon such consolidation being effected the constituent companies passed out of existence and were immediately succeeded by the new corpora-

tion in each of the states under whose laws the consolidation was effected. Clearwater v. Meredith, 1 Wall. 25, 17 L. Ed. 604; Shields v. Ohio, 95 U. S. 319–323, 24 L. Ed. 357; Railroad Co. v. Georgia, 98 U. S. 359–363, 25 L. Ed. 185; Keokuk & W. Ry. Co. v. Missouri, 152 U. S. 301–308, 14 Sup. Ct. 592, 38 L. Ed. 450; Yazoo, etc., Co. v. Adams, 180 U. S. 1–17, 21 Sup. Ct. 240, 45 L. Ed. 395.

In Keokuk & W. Ry. Co. v. Missouri, above, a statute of Missouri substantially the same as those of Iowa and Illinois above referred to was considered. Upon the effect of a consolidation of different railroads under such statute the court said:

"It is difficult to see how the Legislature could provide more clearly for the extinguishment of the prior companies and the formation of a new one, than by providing that the two companies shall become one; that new certificates of stock shall be issued in exchange for the stock of the constituent companies; and the consolidation agreement shall be recorded with the Secretary of State as the charter of a new company. In our opinion, this was the effect of the act in question."

In Railroad Co. v. Georgia, 98 U. S. 359, 25 L. Ed. 185, a statute of Georgia authorized the consolidation of the stocks of two railroad companies upon such terms as might be agreed upon by the directors and ratified by the stockholders, and provided that when so consolidated they should be known as the Atlantic & Gulf Railroad Co., which was the name of one of the companies consolidating. In speaking of the effect of a consolidation under such statute the court said:

"Looking thus at the legislative intent appearing in the consolidation act, we are constrained to the conclusion that a new corporation was created by the consolidation effected thereunder in the place and in lieu of the two companies previously existing, and that whatever franchises, immunities, or privileges it possesses, it holds them solely by virtue of the grant that act made. That generally the effect of consolidation, as distinguished from a union by merger of one company into another, is to work a dissolution of the companies consolidating, and to create a new corporation out of the elements of the former, is asserted in many cases, and it seems to be a necessary result. In McMahan v. Morrison, 16 Ind. 172 [79 Am. Dec. 418] the effect of a consolidation was said to be 'a dissolution of the corporations previously existing, and, at the same instant, the creation of a new corporation, with property, liabilities, and stockholders derived from those then passing out of existence.' * * * 'Consolidation is a surrender of the old charter by the companies, the acceptance thereof by the Legislature, and the formation of a new company out of such portions of the old as enter into the new?'"

The conclusion, therefore, is unavoidable that the defendant company is a new corporation created by and existing under the laws of both Iowa and Illinois, and that in so far as it exercises its powers and function in either state it is to be deemed, for the purpose of federal jurisdiction, a corporation of that state. This is so held in Muller v. Dows, 94 U. S. 444, 24 L. Ed. 207; Railroad Co. v. Wheeler, 1 Black, 297, 17 L. Ed. 130; Railroad Co. v. Meeh, 69 Fed. 753, 16 C. C. A. 510, 30 L. R. A. 250; Winn v. Wabash Railroad Co. (C. C.) 118 Fed. 55.

In Muller v. Dows, above, a bill in equity was filed in the circuit court of the United States for the District of Iowa, by two citizens of New York, and a citizen of Missouri against the Chicago, Rock Island & Pacific Railroad Company, a consolidated corporation of Iowa and

Illinois (one of the companies consolidated as the defendant company), and the Chicago & Southwestern Railway Co., a consolidated corporation of Iowa and Missouri, under the statutes of Iowa above set out, and a similar statute of Missouri. An objection to the jurisdiction of the court rested upon the ground that one of the plaintiffs was a citizen of Missouri, and that the Chicago & Southwestern Railroad Co., was a corporation of Missouri and Iowa. But it was held that in the state of Iowa, the consolidated company was a corporation of that state alone; that the laws of Missouri had no operation in Iowa.

In Railroad Co. v. Wheeler, 1 Black, 286–298, 17 L. Ed. 130; the plaintiff was alleged to be a corporation created by the laws of Indiana and Ohio, and the defendant to be a citizen of Indiana. In holding that the Circuit Court of the United States for the District of Indiana did not have jurisdiction of the controversy, the court said:

"The Ohio & Mississippi Railroad Company is, therefore, a distinct and separate corporate body in Indiana from the corporate body of the same name in Ohio, and they cannot be joined in a suit as one and the same plaintiff, nor maintain a suit in that character against a citizen of Ohio or Indiana in a Circuit Court of the United States."

These and other cases are fully reviewed in Railway Company v. James, 161 U. S. 545, 16 Sup. Ct. 621, 40 L. Ed. 802, and the rule deducible from the conclusions there reached and the authorities cited is that, where a railway corporation created by the laws of one state extends its line into another state, or there acquires the railroad property of a corporation of that state, and there reincorporates or otherwise complies with its laws for the purpose of extending and using its line of railroad and property in that state, it remains for the purpose of federal jurisdiction a corporation of the state in which it was originally created. But, where two or more corporations consolidate their capital stocks and properties into one corporation in pursuance of the laws of different states which so authorize, the stockholders of the old companies becoming stockholders of the new, such consolidated company becomes a new creation and is to be deemed, for the purpose of federal jurisdiction, a corporation of each of the states under whose laws it is so consolidated. In this case (Railway Co. v. James), it is also held that whatever may be the effect of the legislation of one state by way of subjecting foreign corporations doing business therein to its laws, such legislation cannot avail to create a corporation of that state out of a foreign corporation in such sense as to make it a citizen of that state within the meaning of the federal Constitution. To have that effect it would be necessary to create the corporation out of natural persons whose citizenship could be imputed to the state creating the corporation. Unless, therefore, the stockholders of the constituent companies are to be deemed stockholders of the defendant company in this case, that company cannot be deemed a citizen of any state, and there could be no federal jurisdiction of it in any event. See, also, Louisville, etc., Ry. Co. v. Louisville Trust Co., 174 U. S. 552–565, 19 Sup. Ct. 817, 43 L. Ed. 1081.

The defendant relies mainly upon Nashua Railroad Co. v. Lowell Railroad Co., 136 U. S. 356, 10 Sup. Ct. 1004, 34 L. Ed. 363, and Walters v. Railroad Co. (C. C.) 104 Fed. 377. In the former named case the plaintiff as a corporation of New Hampshire brought suit against a Massachusetts corporation in the Circuit Court of the United States for the District of Massachusetts. The jurisdiction was sustained upon the ground that the legislation of New Hampshire and Massachusetts after the incorporation of the plaintiff in New Hampshire, did not have the effect to change the character of that company as a corporation of New Hampshire. In Walters v. Railroad Co. (C. C.) 104 Fed. 377, the defendant company, a corporation of Illinois, purchased the property of a Nebraska corporation, and then incorporated in Nebraska as required by its law, for the purpose of completing its right to the property and to operate the same in that state. Held that it was not to be deemed a Nebraska corporation for the purpose of federal jurisdiction.

The present case upon its facts is not materially different from Missouri Pacific Ry. Co. v. Meeh, 69 Fed. 753, 16 C. C. A. 510, 30 L. R. A. 250, and Winn v. Railroad Co. (C. C.) 118 Fed. 55. In the former of these cases the decision is by the Court of Appeals of this circuit, and in the latter the decision in effect is a decision of that court.

The conclusion, therefore, is that the pleas to the jurisdiction must be sustained, and each of the causes remanded to the court from whence it was removed. It is so ordered.